PARRO, J.
 

 | ⅞A mother appeals a trial court judgment that granted her request for relocation, awarded joint custody, designated her as domiciliary parent, and established a physical custody schedule. This judgment also adjudicated various motions by the parties that were pending before the court. The father answered the appeal. For the following reasons, the judgment is affirmed.
 

 Factual Background and Procedural History
 

 San M. Rains and Kristin Bock Hains met while both were on active duty in the United States Coast Guard. San worked in the medical field and desired to become an x-ray technician. Kristin obtained training in carpentry, welding, and other practical skills. On August 22, 2003, while stationed in Ketchikan, Alaska, San and Kristin got married. The parties then transferred to San Diego, California so San could attend x-ray school. After discussing the possibility of having a child, they decided that neither would reenlist when their current enlistments expired. According to Kristin, they also decided to work on changing their habits relative to smoking and drinking. As part of their plan, both designated units in Louisiana, the home of San’s family, as their next transfer choice. They were transferred to units in the New Orleans area in April 2005 and moved to Slidell. Kristin discontinued drinking and smoking, but San did not. After Hurricane Katrina, the parties began to reevaluate their plans.
 

 In February 2007, Kristin applied for Officer Candidate School. Their son, Dylan, was born on July 25, 2007. In connection with Dylan’s birth, Kristin and San took a leave of absence from the Coast Guard. After spending seven years in the Coast Guard, San departed from active duty in August 2007 at the expiration of his enlistment.' Kristin remained on leave until late September. When Kristin returned to duty, Dylan was placed in daycare. The couple planned to move to Alaska so Kristin could advance her career in the Coast Guard by obtaining the time that she needed at sea. Therefore, in October | o,2007, Kristin requested a transfer for July 2008 — a year before her four-year billet in Louisiana was to be fulfilled. Her transfer request was approved. In conjunction with her request, San and Kristin went through the overseas screening process in January 2008.
 

 Despite Kristin’s anticipated transfer in July 2008, San obtained work in Metairie in January 2008 as an x-ray technician in the civilian sector. Due to problems in their marriage, San indicated that he would not be going with Kristin to Alaska. In an effort to work out their problems, Kristin cancelled her request for transfer to Alaska and submitted a request for early release from her enlistment contract. Nonetheless, on April 9, 2008, San filed a petition for divorce. Subsequently, Kristin withdrew her request for early release, and her orders for transfer to Alaska were cancelled.
 

 In light of Kristin’s request for an early transfer, her tour-complete date for her assignment to Louisiana had been moved up to July 2008, and the position at her Louisiana unit had been marked to be filled for the time of her pending transfer, making it unfeasible for Kristin to remain in her position with the Louisiana unit. Kristin’s reassignment and transfer were inevitable. After considering San’s assurance that he would try to find a job wher
 
 *293
 
 ever she was stationed and considering the assignments available for her rate, pay grade, and particular situation, Kristin felt that San Pedro, California, was the most favorable place for her relocation. Being in San Pedro would allow her to be near her family who lived in San Diego and enable her to obtain the time needed at sea for the advancement of her career.
 

 In June 2008, Kristin engaged the services of a private investigator to perform surveillance on San when he had or was to have physical custody of Dylan. She believed that the surveillance video evidenced San’s abuse of alcohol and his inability to be a parent.
 

 In his petition for divorce, San sought joint shared custody of Dylan. 14Kristin answered and reconvened, alleging that San abused alcohol. A stipulated judgment was signed on August 13, 2008, requiring both parents to submit to a substance abuse evaluation. The judgment provided that San would have physical custody of Dylan one day each weekend and a couple of hours on two weekdays. If the evaluations did not specify any addiction issues, San was to have custody of Dylan on alternating weekends and one overnight visit each week. San and Kristin were prohibited from consuming alcohol within 12 hours prior to, and during, his or her physical custody time with Dylan.
 

 The results of Kristin and San’s substance abuse evaluations failed to reveal any evidence that either had an alcohol abuse problem. Both parties appeared for their August 27, 2008 court date, which was rescheduled to September 10, 2008, due to an ongoing criminal trial. Disputing whether a stipulation had occurred pri- or to their August 27, 2008 court date, Kristin, believing that San drank excessively, declined to follow the visitation order and dictated the terms of San’s visitations. She believed this was necessary to protect her son. On September 8, 2008, Kristin received orders transferring her to San Pedro, California, effective November 15, 2008. By letter dated September 8, 2008, Kristin notified San of the transfer. This letter was sent certified mail to him and was also faxed to his counsel.
 

 At the September 10th hearing, San objected when Kristin sought to have the court review the video surveillance. His objection was based on the fact that it had been taken prior to the August 13, 2008 stipulated judgment. The trial court agreed with San and refused to admit the videos into evidence. On September 10, 2008, San filed a motion to compel, seeking more complete responses to discovery, production of documents, attorney fees, and costs. He also filed a rule for contempt of court for Kristin’s violation of the visitation | .^provisions in the stipulated judgment,
 
 [1]
 
 an objection to Kristin’s request for relocation urging that Kristin should leave the service or should be required to stay in Louisiana, and a motion in limine seeking to prevent the introduction of the surveillance videos.
 

 Kristin opposed San’s motion to compel. She also filed a motion for sanctions in connection with San’s motion to compel and his objection to her request for relocation. In her motion, Kristin also sought a limited evidentiary hearing and a temporary order to relocate, as well as sole custody or, alternatively, joint custody with supervised visitation.
 

 The trial of these matters was set for November 14, 2008, and eventually heard on November 21, 2008. On December 16,
 
 *294
 
 2008, the trial court entered a judgment, which in relevant part:
 

 1. ordered joint custody of Dylan, with Kristin designated as the domiciliary parent,
 

 2. ordered that San enroll in and complete “Phase I and Phase II of a Misdemeanor Probation Alcohol Treatment Program” (treatment program),
 

 3. ordered San to enroll in and complete a parenting class,
 

 4. prohibited San from ingesting any alcohol while Dylan was in his care and control,
 

 5. granted Kristin’s motion to relocate with Dylan to San Pedro, California, on December 18, 2008,
 

 6. ordered that San be given the first right of refusal for visitation with Dylan if Kristin goes out to sea for more than two consecutive weeks at any one time,
 

 7. ordered that upon showing of proof of his enrollment in the ordered treatment program, San would be allowed physical custody of Dylan as follows:
 

 Until the Defendant/Mother relocates to California, San ... shall have visitation in accordance with August 13, 2008, judgment, to wit: every Wednesday from 6:30 p.m. until 8:00 a.m. on Thursday, and beginning on December 13, 2008, every other weekend beginning at 9:00 a.m. on | (¡Saturday until 4:00 p.m. Sunday. The parties shall exchange physical custody at the Slidell police station ....
 

 Following [Kristin’s] relocation, and unless otherwise agreed in writing by the parties, San ... shall have physical custody of the child ... for one month out of every three months (for a minimum of 4 times per year).
 

 8. ordered Kristin to pay all travel-related costs of Dylan’s transportation for visitation, and
 

 9. ordered that the parties agree in writing as to an alternating holiday visitation schedule, or in lieu thereof, the court shall impose a schedule.
 

 San’s motion to compel was granted in part, ordering Kristin to produce records from her personnel file including her “dream sheet,” and Kristin was ordered to pay the costs, but not attorney fees, associated with the bringing of the motion to compel. San’s motion for contempt and motion in limine, as well as Kristin’s motion for sanctions, were denied.
 

 After Kristin’s motion for new trial was denied, she appealed, contending that the trial court erred, as follows:
 

 1. in requiring proof only of enrollment in a treatment program as a prerequisite to visitation,
 

 2. in failing to view the surveillance videos, denying her motion for sanctions,
 

 3. in determining that the frequency of the visitation ordered in favor of San was in Dylan’s best interest,
 

 4. in partially granting San’s motion to compel, and
 

 5. in assessing her with costs related to San’s motion to compel.
 

 San answered the appeal, urging that the trial court erred in the following respects:
 

 1. allowing Kristin to relocate in light of her bad faith interference with his visitation,
 

 2. failing to provide him with a specific schedule of regular and holiday visitation,
 

 3. failing to award him custody for at least six months of the year,
 

 
 *295
 
 4. failing to designate him as the domiciliary parent for the months that he has custody,
 

 |75. in improperly amending the judgment to limit Kristin’s responsibility for travel costs to those of Dylan, and
 

 6. in failing to award attorney fees in connection with the partial grant of his motion to compel.
 

 Relocation
 

 In his answer to Kristin’s appeal, San alleges that Kristin’s request for relocation was motivated by bad faith, and the trial court thus erred in allowing Kristin to relocate. He contends that bad faith interference with his visitation was evidence of her bad faith.
 

 Issues involving parental relocation where a custody order exists are governed by LSA-R.S. 9:355.1 through 355.17. The relocating parent has the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child. LSA-R.S. 9:355.13.
 

 In an effort to pursue her career with the Coast Guard, the parties had agreed that Kristin would request an early transfer from her Louisiana unit. Their desired transfer location was Alaska. While in Alaska, San was to care for Dylan while Kristin pursued her career. However, once San filed the petition for divorce, Kristin requested in July 2008 a transfer to California where she would be near her family who could assist with Dylan’s care while she obtained her time at sea. Her work in California would make her eligible for advancement in the Coast Guard. Furthermore, in light of her request for an early transfer to Alaska, her position in the Louisiana unit was no longer available. Accordingly, we are unable to find manifest error in the trial court’s finding that Kristin’s relocation request was made in good faith.
 
 [2]
 

 In determining the child’s best interest, the trial court must consider the benefits the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life. LSA-R.S. 9:355.13. To assist the trial court in reaching its decision regarding a proposed relocation, LSA-R.S. |s9:355.12 sets forth twelve factors that the trial court must consider:
 

 A, In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
 

 (1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
 

 (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
 

 (3) The feasibility of preserving a good relationship between the nonrelo-cating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
 

 (4) The child’s preference, taking into consideration the age and maturity of the child.
 

 (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
 

 (6) Whether the relocation of the child will enhance the general quality of life
 
 *296
 
 for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
 

 (7) The reasons of each parent for seeking or opposing the relocation.
 

 (8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
 

 (9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
 

 (10) The feasibility of a relocation by the objecting parent.
 

 (11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
 

 (12) Any other factors affecting the best interest of the child.
 

 B. The court may not consider whether or not the person seeking relocation of the child will relocate without the child if 19relocation is denied or whether or not the person opposing relocation will also relocate if relocation is allowed.
 

 Although LSA-R.S. 9:355.12 mandates that all the listed factors be considered, it does not require the court to give preferential consideration to any certain factor or factors.
 
 See Curole v. Curole,
 
 02-1891 (La.10/15/02), 828 So.2d 1094, 1097.
 

 San notes that the trial court did not reference the relocation statute and failed to analyze the factors as required by LSA-R.S. 9:355.12 in making a definitive ruling that such relocation would be in Dylan’s best interest. In oral reasons for judgment, the trial court simply stated that because the mother was in the Coast Guard when the couple married, the father should have known of the possibility that the mother could be transferred at any time. The court also observed that transfer was not something totally within Kristin’s control. Therefore, the court authorized Kristin’s relocation with Dylan. The oral reasons indicate a failure to consider the factors required by LSA-R.S. 9:355.12 and imply that any relocation request by Kristin due to transfer by the Coast Guard would have been acceptable. In light of the nature of this case, we conclude that the trial court imposed a lesser burden on Kristin than the law requires.
 

 When a trial court incorrectly applies a principle of law, which causes a substantial deprivation of a party’s rights or materially affects the disposition, it commits a legal error.
 
 Evans v. Lungrin,
 
 97-541 (La.2/6/98), 708 So.2d 731, 735. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.
 
 Id.
 
 When such a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo.
 
 Id.
 

 In conducting a de novo review of the record, we note that the evidence | ^establishes that both Kristin and San have played an active role in Dylan’s life. At times, each has been Dylan’s primary caretaker. They are good parents, who love their son. Although San has extended family in Louisiana, he was not associating with them at the time of trial. In fact, the record reflects that Kristin’s relationship with San’s parents was better than San’s. Kristin has an extended family
 
 *297
 
 that lives in Oceanside, California, which is about an hour and a half from San Pedro.
 

 At the time of trial, Dylan was 16 months old and attending daycare while his parents worked. Since he had not yet started school, he did not have a school history. With relocation, the only obstacle to maintaining San’s relationship with Dylan was distance and the expense involved with Dylan’s transportation. In order to facilitate Dylan’s continuing relationship with his father, Kristin was willing to assist with Dylan’s travel costs. The child’s preference factor is not relevant given Dylan’s age.
 

 Prior to the judgment from which this appeal lies, Kristin refused to comply with the visitation schedule set forth in the stipulated judgment. Her testimony establishes that such refusal was based on her belief that San abused alcohol and that Dylan was in need of protection. Furthermore, she disputed whether they had entered into a stipulated judgment since she had not had her day in court. At trial, she testified that she would abide by the judgment entered by the trial court after it had heard all of the evidence, even one that authorized unsupervised visitation by San. Kristin was aware that it was not good for a child Dylan’s age to be withdrawn from his father. She recognized that San loves Dylan and acknowledged the importance of Dylan maintaining a relationship with his father.
 
 [3]
 
 Kristin even suggested the use of a webcam as a method of maintaining contact. Kristin also noted the importance of Dylan’s relationship with San’s parents and vowed to continue to foster that ^relationship.
 

 The record establishes that Kristin had been on active duty with the Coast Guard for nine years. She had planned a career with the Coast Guard and would be stationed in California for approximately three years, or through July 2011. Her sex and rank limited her assignment possibilities with the Coast Guard. The smaller cutter in San Pedro, California would require her to be out at sea for only three days at a time as opposed to three to six months with the larger cutters. If she and Dylan are able to move to California, she would have a secure job with a chance of advancement in the Coast Guard, which will result in a higher salary and a better standard of living for them. If she is not allowed to move, she would be required to continue to reside in Louisiana where her position in the Louisiana unit has already been filled. There are no available cutters in the New Orleans area that accommodate women. She does not have a degree or any type of certification. Although the evidence shows that Kristin could possibly obtain employment with San’s father, working at his jewelry store in Morgan City, that employment option would require that she give up her career in the Coast Guard. Although San testified that the terms of employment with his father would be better than Kristin has in the military, he conceded that the retirement and benefits offered by the military are better. Kristin testified that, if she continued in the Coast Guard, she would be eligible for retirement in 11 years. Thus, the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
 

 Kristin is seeking relocation pursuant to a transfer by the Coast Guard, which would allow her to remain a member of the Coast Guard and give her an opportunity to advance her career. San’s opposition to the relocation is equally clear. He loves Dylan, and he does not want to be separated from him. However, he testified that
 
 *298
 
 he was aware that Kristin’s job would eventually require her to relocate.
 

 | ^Considering the situation of both parties, it appears that it might be feasible for San to relocate. The parties have discussed this possibility. At one point San, who was in a relationship with another woman and worked as an x-ray technician for a company with offices across the country, was open to the idea. San checked into the possibility of being transferred to California but without much luck due to a hiring freeze and cutbacks. However, he had not gone so far as to check on the availability of employment with other entities in the San Pedro area. Notably, he had applied locally with a company in an effort to obtain better pay and room for growth. He was not interested in returning to the Coast Guard..
 

 Although Kristin has alleged that San has an alcohol abuse problem, the record establishes that he has never been treated for substance abuse, has never been arrested for driving under the influence, has abided by the court’s order that he refrain from drinking prior to and during visitations, and has never been diagnosed as suffering from such a condition.
 

 Based on our de novo analysis of the twelve factors set out in LSA-R.S. 9:355.12, we find no factors that would prevent relocation. After weighing the factors as a whole, we find that they weigh in favor of allowing the relocation. Accordingly, we find that Kristin has suecess-fully carried her burden of proving that the relocation is in Dylan’s best interest as required by LSA-R.S. 9:355.13. Thus, the legal error by the trial court did not materially affect the outcome. Therefore, we find no clear abuse of discretion by the trial court in authorizing the relocation.
 
 [4]
 

 Custody
 

 Kristin urges that the trial court erred in only requiring proof of San’s enrollment in a treatment program as a prerequisite to his entitlement to overnight visitation and that such a prerequisite alone provided no mechanism |1sor review process to ensure that San’s drinking had changed as a result of his attending the classes. In light of the following evidence, we are unable to find that the trial court committed error in allowing joint custody and unsupervised visitation to San upon proof of enrollment in the treatment program: the court-appointed expert found that San did not have a substance abuse problem,
 
 [5]
 
 the ACER evaluation revealed that San did not have a substance abuse problem, and San testified that he did not drink when he had physical custody of Dylan. In any event, this assignment of error is moot because San subsequently completed his enrollment obligations, proof of which is in the record.
 

 Next, Kristin asserts that the evidence in the record did not support a finding that the ordered visitation schedule was in Dylan’s best interest. In particular, she points to Dylan’s tender age and San’s
 
 *299
 
 excessive drinking as allegedly evidenced by surveillance videos that were offered into evidence. San has also assigned error with regard to the visitation schedule set by the trial court. He urges error in the trial court’s failure to award him physical custody of Dylan for at least six months of the year, guaranteeing shared physical custody of Dylan. He also complains that the trial court erred in failing to provide him with a specific schedule of regular and holiday visitation in light of Kristin’s interference with his visitation in the past.
 

 It is undisputed that the investigation and filming of the surveillance videos were done on or about June 24, and July 31, 2007, which was before the August 13, 2007 stipulated judgment. Kristin testified about the content of the videos, but she did not introduce the testimony of the videographer to | ^authenticate the video tapes.
 
 [6]
 
 Furthermore, the evidence of San’s more recent conduct that was offered at trial presented a conflicting view. Based on these facts, we find no error or abuse of discretion in the trial court’s failure to view the surveillance videos.
 

 In the absence of an agreement, the court shall award custody to the parents jointly. LSA-C.C. art. 132. To the extent it is feasible and in the best interest of the children, physical custody of the children should be shared equally. LSA-R.S. 9:335(A)(2)(b). Nonetheless, the trial court’s finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody.
 
 Martello v. Martello,
 
 06-0594 (La.App. 1st Cir.3/23/07), 960 So.2d 186, 191,
 
 citing Stephens v. Stephens,
 
 02-0402 (La.App. 1st Cir.6/21/02), 822 So.2d 770, 777. The implementation order should allocate the time periods during which each parent shall have physical custody of the children so that the children are assured of “frequent and continuing contact” with both parents. LSA-R.S. 9:335(A)(2)(a). In a decree of joint custody,
 
 [7]
 
 the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown. LSA-R.S. 9:335(B)(1).
 

 The primary consideration in a child custody determination is always the best interest of the child. LSA-C.C. art. 131. Louisiana Civil Code article 134 enumerates the following twelve nonexclusive factors that are relevant in determining the best interest of the child:
 
 [8]
 

 1. The love, affection, and other emotional ties between each party and the child;
 

 11fi2. The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child;
 

 3. The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs;
 

 4. The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment;
 

 
 *300
 
 5. The permanence, as a family unit, of the existing or proposed custodial home or homes;
 

 6. The moral fitness of each party, insofar as it affects the welfare of the child;
 

 7. The mental and physical health of each party;
 

 8. The home, school, and community history of the child;
 

 9. The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
 

 10. The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
 

 11. The distance between the respective residences of the parties; and
 

 12. The responsibility for the care and rearing of the child previously exercised by each party.
 

 The best-interest-of-the-child test under LSA-C.C. arts. 131 and 134 is a fact-intensive inquiry, requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case.
 
 Martello,
 
 960 So.2d at 191. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child.
 
 Id.
 

 The trial court is vested with broad discretion in deciding child custody cases. Because of the trial court’s better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court.
 
 Martello,
 
 960 So.2d at 191. A trial court’s determination regarding child custody will not be disturbed absent a clear abuse of discretion.
 
 Id.
 
 at 191-92.
 

 116In light of the distance between the parents following the relocation, Dylan’s tender age, and the expense involved in transporting Dylan from one location to the other, the trial court apparently believed that shared custody was not in Dylan’s best interest. Instead, the trial court found that one of the parents needed to be designated as the domiciliary parent, who would have the obligation of communicating with the other parent concerning all matters related to the child’s health, school, activities, and the like. That parent would be in a position to make a decision concerning matters if the other parent did not agree.
 
 [9]
 
 After hearing the evidence, the trial court found that Kristin should be that parent.
 

 By awarding San custody for one month out of every three months, the trial court split Dylan’s time approximately 2/3 to Kristin and 1/3 to San at a minimum. Additionally, San was to be given the opportunity to have physical custody of Dylan on alternating holidays, as well as when Kristin was at sea for more than two consecutive weeks at any one time. In ordering joint custody, the trial court was trying to maximize the amount of San’s physical custody while minimizing the
 
 *301
 
 transportation costs associated with that custody.
 

 Considering the feasibility of preserving a good relationship between the nonrelo-cating parent and the child through suitable custody arrangements, as well as the logistics associated with the custodial times and the financial circumstances of the parties, we conclude that the findings of the trial court concerning custody are reasonable and are not manifestly erroneous. Furthermore, we find no merit to San’s argument that the trial court erred or abused its discretion in failing to name him as a co-domiciliary parent or as the 117domiciliary parent during the minimum of four months of the year during which he had physical custody of Dylan. A decree of joint custody was entered in this case. Pursuant to the designation as domiciliary parent, Kristin was the parent with whom Dylan would primarily reside. Furthermore, the trial court observed the demean- or of the parties and apparently believed that Kristin would work with San with regard to Dylan’s best interest.
 

 Travel-Related Expenses
 

 San complains that the trial court improperly modified its “oral judgment” to limit Kristin’s responsibility for travel-related costs to the minor child only. He notes that the trial court orally ruled that Kristin would be liable for all travel costs. However, the judgment simply orders Kristin to pay for the costs of Dylan’s travel. In light of this disparity, San contends that the trial court modified the substance of the trial court judgment in •violation of LSA-C.C.P. art. 1951.
 

 Article 1951 provides:
 

 A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
 

 (1) To alter the phraseology of the judgment, but not the substance; or
 

 (2) To correct errors of calculation.
 

 A final judgment shall be identified as such by appropriate language. LSA-C.C.P. art. 1918. We note that when written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment.
 
 Id.
 
 Thus, where there are only written reasons and no separate signed judgment, there is no final judgment.
 
 White v. West Carroll Hospital, Inc.,
 
 613 So.2d 150, 155 (La.1992).
 

 In the instant case, the trial court issued only oral reasons for its findings. In oral reasons, the trial court stated that Kristin was “to pay for the transportation.” Until such findings were reduced to writing, there was no final | ^judgment.
 
 See White,
 
 613 So.2d at 155. The written judgment simply ordered Kristin to pay for all travel-related costs of Dylan’s transportation for visitation. The trial courts written judgment is controlling, even if the trial court may have intended otherwise.
 
 Rebco Marine, Inc. v. Homestead Insurance Company,
 
 961975 (La.App. 1st Cir.12/29/97), 706 So.2d 508, 511. The written judgment in this case was not subsequently modified by the trial court after signing the judgment. Since there was no modification to the “final judgment” by the trial court in this case, this assignment of error lacks merit.
 
 [10]
 

 Motion to Compel
 

 Kristin asserts that the trial court erred in partially granting San’s motion to compel and in ordering her to pay associated costs. The particular discovery request at issue, which she objected to on the ground of relevancy, pertained to Kris
 
 *302
 
 tin’s applications for a transfer. San maintains that the desired information was relevant to Kristin’s request for relocation. The trial court agreed and ordered the documents to be produced. However, it declined to award attorney fees since the procedure set forth in La. Dist. Ct. R. 10.1 was not followed properly by San. Instead, it simply awarded the costs of filing the motion.
 

 Kristin urges that since San did not abide by Rule 10.1, his motion to compel should not have been partially granted and she should not have been ordered to pay costs. Rule 10.1, which pertains to discovery motions, provides:
 

 Before filing any discovery motion, the moving party must attempt to arrange a conference with the opposing party for the purpose of amicably resolving the discovery dispute. The conference may be conducted in person or by telephone. The discovery motion must include a certificate stating:
 

 (a) that the parties have conferred in person or by telephone as required by this rule and the reasons why they were unable to agree; or
 

 (b) that opposing counsel has refused to confer after reasonable notice.
 

 | i3If the court finds that opposing counsel has willfully failed to confer, or failed to confer in good faith, the court may impose sanctions.
 

 See Judson v. Davis,
 
 04-1699 (La.App. 1st Cir.6/29/05), 916 So.2d 1106, 1116,
 
 writ denied,
 
 05-1998 (La.2/10/06), 924 So.2d 167. Rule 10.1 requires that, before filing any discovery motion, the moving party must first attempt to arrange a conference with the opposing party to try to resolve the discovery dispute. Also, a discovery motion must include a certificate stating that the parties conferred and the reasons why they were unable to agree or that opposing counsel refused to confer after reasonable notice.
 
 Trahan v. State ex rel. Dept. of Health and Hospitals,
 
 04-743 (La.App. 3rd Cir. 11/10/04), 886 So.2d 1245, 1251.
 

 On appeal, San does not dispute the fact that his motion to compel failed to comply with Rule 10.1; instead, he urges that compliance with Rule 10.1 is required only in non-family/non-domestic cases. The trial court disagreed, stating that Rule 10.1 is followed in family court. Rule 10.1 is found in Title II of the Louisiana District Court Rules. According to La. Dist. Ct. R. 1.1(b), Title II of the rules applies to all civil proceedings in district courts except for family, juvenile, and domestic relations proceedings. Therefore, San correctly asserts that compliance with Rule 10.1 was not necessary in a family proceeding.
 

 Title IV of the Louisiana District Court Rules applies to family and domestic relations proceedings. The numbering system for the rules in Title IV reveals that the filing of discovery motions in these types of proceedings is governed by Rule 26.1 of Chapter 26. However, the rules for the Twenty-Second Judicial District Court do not include Chapter 26 relating to discovery. Accordingly, we find no abuse of discretion or error in the trial court’s consideration of San’s motion to compel.
 

 Since the Louisiana District Court Rules are intended to supplement the Louisiana Code of Civil Procedure, in the absence of an applicable rule, we refer |znto the Code of Civil Procedure for guidance.
 
 See
 
 La. Dist. Ct. R. 1.0, Comment (a). A party generally may obtain discovery regarding any matter that is relevant to the subject matter involved in the pending action. LSA-C.C.P. art. 1422. There are limitations to this rule, however, when justice requires that a party or other person be protected from annoyance, embarrassment, oppression, or undue burden or expense.
 
 Stolzle v. Safety & Systems Assur.
 
 
 *303
 

 Consultants, Inc.,
 
 02-1197 (La.5/24/02), 819 So.2d 287, 289;
 
 see
 
 LSA-C.C.P. art. 1426. The trial court has broad discretion in ruling on discovery matters.
 
 Laburre v. East Jefferson Gen. Hosp.,
 
 555 So.2d 1381, 1385 (La.1990). Based on our review of the requested discovery and the issues presented to the trial court for consideration, we are unable to find that the trial court abused its discretion in determining that the requested document was relevant or by partially granting San’s motion to compel.
 

 Relative to motions to compel discovery, LSA-C.C.P. art. 1469(4) provides:
 

 If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney’s fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
 

 If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney’s fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.
 

 If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.
 

 This provision provides for three different scenarios. In the instant case, San’s motion to compel was not “granted” but rather was “granted in part.” Furthermore, the scenario pertaining to a “grant in part” does not expressly | ¾1 authorize an award of attorney fees. Therefore, San’s argument that an award of attorney fees was mandatory in this case lacks merit. Because San’s motion was granted in part, we find that the trial court acted within its discretion in ordering Kristin to pay court costs associated with the filing of the motion and in not ordering her to pay San’s attorney fees.
 

 Motion for Sanctions
 

 Kristin challenges the trial court’s denial of her motion for sanctions. In connection with her motion, Kristin asserts that the allegations in San’s motion to compel and objection to relocation were untrue, that his arguments were not supported by law or the evidence, and that San knew that Kristin’s relocation was inevitable. In light of the fact that San’s motion to compel was partially granted, we find no merit in Kristin’s argument that San’s motion to compel was unfounded.
 

 The imposition of sanctions in connection with a request for relocation is authorized by LSA-R.S. 9:355.16(A), which provides:
 

 After notice and a reasonable opportunity to respond, the court may impose a sanction on a parent proposing a relocation of the child or objecting to a proposed relocation of a child if it determines that the proposal was made or the objection was filed:
 

 (1) To harass the other parent or to cause unnecessary delay or needless increase in the cost of litigation.
 

 (2) Without being warranted by existing law or based on a frivolous argument.
 

 (3) Based on allegations and other factual contentions which have no evi-
 
 *304
 
 dentiary support nor,
 
 if
 
 specifically so identified, could not have been reasonably believed to be likely to have eviden-tiary support after further investigation.
 

 (Emphasis added.) The language of LSA-R.S. 9:355.16(A) is clearly permissive. The trial court in this case decided against imposing sanctions. Further, we note that the slightest justification for the exercise of a legal right precludes sanctions,
 
 Bingham v. Bingham,
 
 44,292 (La.App. 2nd Cir.5/13/09), 12 So.3d 448, 452. Under the facts of this case, we find that this assignment of error isj^without merit.
 

 Decree
 

 For the foregoing reasons, the judgment of the trial court is affirmed. The parties are to bear their own costs of appeal.
 

 AFFIRMED.
 

 [1]
 

 . Kristin denied San overnight visitations from August 27, 2008, until the date of trial, November 21, 2008, based on San’s refusal to wear a Secure Continuous Remote Alcohol Monitoring, or SCRAM, bracelet.
 

 [2]
 

 .
 
 See Curole v. Curole,
 
 02-1891 (La.10/15/02), 828 So.2d 1094, 1097-98.
 

 [3]
 

 . San has been providing financial support for Dylan.
 

 [4]
 

 . A trial court's determination in a relocation matter involving children of parties to a divorce is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion.
 
 Curóle,
 
 828 So.2d at 1096.
 

 [5]
 

 . Dr. Rafael F. Salcedo was appointed by the trial court to perform a mental health evaluation of San and Kristin. His evaluation of San revealed insufficient data to warrant a formal diagnosis concerning his use of alcohol. Dr. Salcedo found that there did not appear to be compelling evidence that San's alcohol consumption had impaired either his social or occupational functioning or had caused him any subjective distress. Nonetheless, given San’s genetic family history of alcohol problems, Dr. Salcedo noted that San had the potential for developing problems with alcohol.
 

 [6]
 

 . In the absence of a proper foundation for the proffered surveillance videos, they are properly excludable by the trial court.
 
 See Rareshide v. Mobil Oil Co.,
 
 97-1376 (La.App. 4th Cir.4/22/98), 719 So.2d 494, 504,
 
 writ denied,
 
 98-1595 (La.10/9/98), 726 So.2d 28.
 

 [7]
 

 . "Joint custody” means a joint custody order that is not "shared custody” as defined in LSA-R.S. 9:315.9. LSA-R.S. 9:315.8(E). "Shared custody” means a joint custody order in which each parent has physical custody of the child for an approximately equal amount of time. LSA-R.S. 9:315.9(A)(1).
 

 [8]
 

 .Many of these factors were considered by this court in determining the relocation issue.
 

 [9]
 

 . The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents. LSA-R.S. 9:335(B)(2). The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child. LSA-R.S. 9:335(B)(3).
 

 [10]
 

 . Furthermore, under the circumstances of this case, we find no abuse of discretion in the trial court’s failure to order Kristin to pay the travel-related costs incurred by San.