MOLAISON, J.
This action for injunctive relief was brought by Joy Bourgeois, on behalf of herself and her four children, against Paget Bazile, the girlfriend of Ms. Bourgeois' former husband and the children's father, Mickey Bourgeois.[1] The trial court granted a permanent injunction for one year, based on evidence that Ms. Bazile initiated a physical confrontation with Ms. Bourgeois and interfered in matters involving the children.
Ms. Bazile appealed to question Ms. Bourgeois' right to seek relief on behalf of her eighteen-year-old son and the sufficiency of the evidence to support the granting of injunctive relief under La. C.C.P. art. 3601, which requires proof by a preponderance of the evidence that irreparable injury, loss or damage may otherwise result and that the petitioner is without an adequate remedy at law. Zeringue v. St. James Parish School Bd. , 13-444 (La. App. 5 Cir. 11/19/13), 130 So.3d 356, 358-359.
We affirm the judgment as to Ms. Bourgeois. Based on a discrepancy between the trial court's oral reasons for judgment and the written judgment, which was not asserted by either litigant but became apparent in our review of the record, we find that the children were not included as protected persons in the written judgment, despite the trial judge's apparent intention to include them. In such circumstances, the written judgment controls. Marino v. Marino , 576 So.2d 1196, 1198 (La. App. 5 Cir. 1991) ; Hains v. Hains , 2009-1337 (La. App. 1 Cir. 3/10/10), 36 So.3d 289, 301. Accordingly, only Ms. Bourgeois is a protected person under the judgment.
FACTS AND PROCEDURAL BACKGROUND
At the time of the events giving rise to Ms. Bourgeois' suit for injunctive relief, she and her ex-husband had joint custody of the children, who ranged in age from eight to eighteen. Ms. Bourgeois was the domiciliary parent and home-schooled the children. For reasons that are not relevant to this case, Mr. Bourgeois had visitation with the children at Ms. Bourgeois' home.
In May 2018, Ms. Bourgeois filed for sole custody of the children. Mr. Bourgeois and Ms. Bazile were apparently engaged to be married at the time, and Ms. Bazile attended the court proceedings in the custody case. Ms. Bourgeois and Ms. Bazile had some differences of opinion about certain things involving the children, culminating in an incident at Ms. Bourgeois' home on August 26, 2018, in which Ms. Bazile pushed Ms. Bourgeois into the front door of the home. Ms. Bourgeois reported the incident to the police. The next day, Ms. Bazile contacted Child Protective Services to report her concerns about the manner in which Ms. Bourgeois was caring for the children. An investigator contacted Ms. Bourgeois, who denied the allegations.
A few days later, Ms. Bourgeois filed this suit against Ms. Bazile seeking injunctive relief on behalf of herself and the children. Ms. Bourgeois alleged that Ms. Bazile had stalked, harassed and assaulted her, had threatened to kidnap her children by taking them on a cruise out of the country despite knowing that Ms. Bourgeois opposed that, and had made a false report against her with Child Protective Services in an attempt to have her children taken away from her. She also alleged that Ms. Bazile questions the children and makes them feel uncomfortable.
The trial court issued a temporary restraining order in favor of Ms. Bourgeois and the children, temporarily prohibiting Ms. Bazile from having any contact with them and from taking the children on a cruise or showing up at their events, among other things.
The hearing on the request for a permanent injunction was held in September 2018. Ms. Bourgeois and Ms. Bazile each represented themselves at the hearing and were the only witnesses.
At the hearing, Ms. Bourgeois testified that Ms. Bazile had been harassing her through phone calls, including one in July 2018, when Ms. Bazile called her after court in the custody case to tell her all the mistakes she was making with her children, that she did not control her children, and that Ms. Bazile and Mr. Bourgeois were going to take the children on a cruise. The parties disputed whether Ms. Bourgeois voiced any objection to the children going on a cruise at the time. Ms. Bourgeois stated she told Ms. Bazile that her children could not go on a cruise without her because she had a fear of them falling overboard. Ms. Bazile claimed Ms. Bourgeois was initially supportive of the children going on a cruise and changed her position later.
August 26 Incident
With regard to the incident at Ms. Bourgeois' home on August 26, 2018, Ms. Bourgeois testified that Ms. Bazile confronted her and assaulted her when she came home to exchange the children with her ex-husband, who had apparently already left at Ms. Bazile's request. According to Ms. Bourgeois, Ms. Bazile got very irate with her, asked her what she does with her child support, asked her what she had done with money earned by her eighteen-year-old son that she was supposed to be keeping for him, told her that she was a bad mother, and told her that she does not control her children and that Ms. Bazile and Mr. Bourgeois would take the children on a cruise whether Ms. Bourgeois liked it or not.
Ms. Bourgeois testified that Ms. Bazile refused to leave when she told her to leave and backed Ms. Bourgeois up into her front door with her chest on top of Ms. Bourgeois' chest while screaming at her, at which point Ms. Bourgeois told her she was going to call the police. Ms. Bourgeois said Ms. Bazile replied that she wanted the police to come take her children. Ms. Bourgeois called the police, but Ms. Bazile left before they arrived. Ms. Bourgeois testified that Mr. Bourgeois and Ms. Bazile had put a band-aid over her doorbell camera "so that ... it would not record her attacking me."
Later that day, Ms. Bazile sent Ms. Bourgeois an email relating her concerns about the children, saying she only wanted what was best for them, and expressing her disappointment in how Ms. Bourgeois responded to her earlier in the day.
Ms. Bourgeois introduced in evidence a copy of the police report she filed concerning the August 26 incident and said she intends to press charges for simple battery. Ms. Bazile had not been arrested as of the hearing date.
Report to Child Protective Services
On August 27, 2018, the day after the incident at Ms. Bourgeois' home, Ms. Bazile contacted Child Protective Services (CPS). According to Ms. Bourgeois, Ms. Bazile told CPS that Ms. Bourgeois was not feeding or educating her children, had no air conditioning, and locked the children in their bedrooms with deadbolt locks. Ms. Bourgeois testified that CPS came to her home to investigate the allegations and did not find them to be substantiated.[2]
Ms. Bourgeois testified that her ex-husband had broken the refrigerator, the air conditioner was not working because he had tampered with it, and the only places with deadbolt locks were her bedroom and the garage, where she kept her files and personal items because her ex-husband was spiteful and would throw her things out. She stated that Ms. Bazile and Mr. Bourgeois were trying to set her up and that Ms. Bazile had threatened to lie to a judge to have her children taken away but Mr. Bourgeois acknowledged that she was not allowed to do that.
Other Evidence
Ms. Bourgeois called the police on another occasion, when she mistakenly believed that Ms. Bazile was in her home with Mr. Bourgeois and the children after the temporary restraining order had been issued, but she cancelled the call after learning that Ms. Bazile was not there.
Ms. Bazile works in the local Boy Scouts of America office. She testified that she has a handicapped daughter and she is very involved in organizations that assist individuals with mental illness and developmental disabilities. She stated she reported Ms. Bourgeois to Child Protective Services because she was required by law to do so. She said she never told Ms. Bourgeois that she was a bad mother, but she does have concerns about the children being behind their grade level in school, particularly the youngest child, and "sometimes parents are just not educated on the issues, so I always like to try to talk to them."
Ms. Bazile claimed the children were three years behind their grade level and said the youngest child, who is eight years old, cannot read. Ms. Bourgeois denied that the children are three years behind. She acknowledged that her daughter is behind on reading and confuses letters, but stated she has hired a private tutor to help her daughter with reading. Ms. Bourgeois testified that her daughter was diagnosed with ADHD recently and will be tested for learning disabilities. She further stated that her daughter has come home upset the last four or five times she was with her father "because they quiz her on reading." Ms. Bourgeois claimed that Ms. Bazile and Mr. Bourgeois spend their weekends questioning the children and making them feel uncomfortable.
Ms. Bazile introduced in evidence some emails and text messages from June 2018, when she and Ms. Bourgeois were getting along well and cooperating with regard to the children, and confirmation of the October 2018 cruise that she and Mr. Bourgeois had booked for themselves and the children.
Ms. Bourgeois testified that Ms. Bazile and Mr. Bourgeois began their relationship while he was still married. It appears from the record that Ms. Bourgeois learned of Ms. Bazile's engagement to Mr. Bourgeois in April 2018 and initially tried to welcome her into the family. According to Ms. Bazile, Ms. Bourgeois told her that she, Ms. Bazile, would be a "bonus mom" to the children and would be co-parenting them. In a text message introduced by Ms. Bazile, however, Ms. Bourgeois said, "After all once you marry Mickey you will be co-parenting with us." There was no evidence that the two were married at the time of the hearing.
Ms. Bourgeois testified, "I'm not co-parenting with her; I'm co-parenting with him.... These are not her children.... I need her to stay completely away from me and my children. I fear for my children's safety." She said Mr. Bourgeois did not have a problem with her parenting or with her home-schooling of the children until she filed for sole custody.
TRIAL COURT RULING
In granting the permanent injunction, the trial judge told Ms. Bazile:
You are to stay at least a hundred yards away from Ms. Bourgeois and her children. You are not to go ... near her place of work or - I don't know if the children go to school; it sounds like they're schooled at home. But you're not to go anywhere near them or events that they are attending right now. Anything ... where Ms. Bourgeois's going to be or her children are going to be, you need to just step back. You are interfering, and it is not in the best interest of the children. And ... I can see why Ms. Bourgeois finds it threatening, because it is threatening. You're very - you're very, very smug, and you think that you know better and you're going to tell her how to handle her children. And that is not your place....
I am issuing the restraining order. I'm going to put it in effect for a period of one year. And if you want to try to get it lifted, you can come back and show me
that circumstances have changed and that it should be lifted.... So no contact via text, via telephone, through
third parties. You need to let Mr. Bourgeois handle his business with his children and his ex-wife, and you need to stay out of it.
The trial court found that Ms. Bazile "represents a credible threat to the physical safety of a non-family or household member, and that irreparable injury, loss or damage may result to the protected persons(s)." The court prohibited Ms. Bazile from abusing, harassing, assaulting, stalking, following, tracking, monitoring or threatening the protected person(s), from having any contact with the protected person(s), from going within 100 yards of the protected person(s) or of Ms. Bourgeois' residence, from damaging any belongings of the protected person(s) or interfering with their living conditions, and from contacting family members or acquaintances of the protected person(s).
The trial court judgment, issued in the form of a Louisiana Uniform Abuse Prevention Order, identifies Ms. Bourgeois as the petitioner and lists the names of each of the four children, but it indicates that only the petitioner is a protected person. However, in its oral reasons for judgment, the trial court stated that the injunction would extend to the children. It appears from the briefs that both parties believe the permanent injunction was issued in favor of Ms. Bourgeois and the four children.
ASSIGNMENTS OF ERROR
Ms. Bazile appealed the judgment, raising three assignments of error:
1. Ms. Bourgeois has no right of action on behalf of the eldest child, who was eighteen when the petition was filed.
2. The record does not support the granting of injunctive relief because the evidence does not show that Ms. Bazile represents a credible threat to Ms. Bourgeois and/or her minor children such that irreparable injury, loss or damage may result.
3. Ms. Bourgeois has an adequate remedy at law because the core issue in this case is a custody dispute between the children's parents and the issue of what is in the best interest of the children is being litigated in the custody case.
Ms. Bourgeois did not appeal the trial court judgment or file an answer to Ms. Bazile's appeal.[3]
ANALYSIS
We first address the issue of who is a protected person under the trial court's judgment, an issue that became apparent in our review of the record to address Ms. Bazile's first assignment of error.
Who is a Protected Person
The trial court completed a Louisiana Uniform Abuse Prevention Order, a printed form to be used when granting certain types of injunctive relief. La. C.C.P. art. 3607.1. The first two pages of the form each contain a section for identifying the persons protected by the order. In each of those sections, there is space for listing names and dates of birth, and there are two boxes for indicating who is a protected person, one box for "Petitioner" and the other box for "Other(s)." On both pages, the names of Ms. Bourgeois and the four children are listed, but only one box is checked, the box for "Petitioner." The box for "Other(s)" is not checked.[4]
Another section of the form requires the court to describe the relationship between the protected person(s) and the defendant. The only thing listed in that section is "ex husband's girlfriend." None of the boxes dealing with children are checked.
In the temporary restraining order, which was issued by another judge using the same printed form, both boxes in the sections identifying the protected persons are checked, and the relationships of the protected persons to the defendant are described as "child of defendant's current or former intimate partner" and "ex husband's girlfriend."
It is unclear whether the trial court intended to include the children as protected persons in the permanent injunction. Although the court's oral reasons for judgment indicate that the court intended to enjoin Ms. Bazile from having any contact with Ms. Bourgeois or the children, the written judgment does not identify the children as protected persons.
A trial judge may render a written judgment which differs in substance from his or her prior oral statements. The oral statements form no part of the judgment. The written judgment is the only ruling from which an appeal may be taken. Marino v. Marino , 576 So.2d at 1198. See also La. C.C.P. arts. 1911, 1918.
When there is a conflict between oral reasons for judgment and a written judgment, the written judgment controls. Marino, 576 So.2d at 1198. This is true even when the trial court may have intended otherwise. Hains v. Hains , 36 So.3d at 301.
When the trial court's written judgment differs in substance from the court's oral reasons for judgment, a litigant who seeks to have the written judgment modified to conform to the oral reasons must either file a motion for new trial, appeal the judgment, or file an answer to the other party's appeal. La. C.C.P. arts. 1951, 1971, 2082, 2133. See and compare Hebert v. Hebert , 351 So.2d 1199, 1200 (La. 1977) ; Neumeyer v. Schwartz , 97-995 (La. App. 5 Cir. 3/25/98), 708 So.2d 1258, 1262 ; and Hofler v. J.P. Morgan Chase Bank, N.A. , 46,047 (La. App. 2 Cir. 1/26/11), 57 So.3d 1128, 1134-1135.
Ms. Bourgeois did not file a motion for new trial, appeal the judgment or answer Ms. Bazile's appeal to question the discrepancy between the trial court's oral reasons and written judgment. Pursuant to the written judgment, only Ms. Bourgeois is a protected person. Accordingly, Ms. Bazile's assignment of error concerning Ms. Bourgeois' right to seek protection on behalf of her eighteen-year-old son is moot, and we do not address that issue.
Sufficiency of the Evidence
An injunction is a harsh, drastic and extraordinary remedy, and should only issue where the mover is threatened with irreparable loss or injury without an adequate remedy at law. Irreparable injury means the moving party cannot be adequately compensated in money damages for the injury or suffers injuries which cannot be measured by pecuniary standards. Zeringue v. St. James Parish School Bd. , 130 So.3d at 359.
The burden of proof for obtaining a permanent injunction is a preponderance of the evidence. The appellate court reviews the granting or denial of a permanent injunction under the manifest error standard of review. Zeringue , 130 So.3d at 358-359. This standard recognizes that the trier of fact is in a better position to evaluate the credibility of witnesses and make factual determinations than is a reviewing court. Parish Nat. Bank v. Ott , 02-1562 (La. 2/25/03), 841 So.2d 749, 753.
In order to reverse a trial court's factual findings under the manifest error standard, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. If the trial court's findings are reasonable in light of the record as a whole, an appellate court may not reverse, even if it is convinced that it would have weighed the evidence differently. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Stobart v. State through Dept. of Transp. and Development , 617 So.2d 880, 882-883 (La. 1993) ; Parish of East Feliciana ex rel. East Feliciana Parish Police Jury v. Guidry , 2004-1197 (La. App. 1 Cir. 8/10/05), 923 So.2d 45, 53 writ denied , 2005-2288 (La. 3/10/06), 925 So.2d 515.
Based on the evidence presented at the hearing, we cannot say the trial court was clearly wrong in concluding that Ms. Bazile's conduct posed a threat of irreparable injury or loss to Ms. Bourgeois without an adequate remedy at law. The court found Ms. Bazile's encounters with Ms. Bourgeois in which she questioned how Ms. Bourgeois was handling her children to be threatening. This included a physical confrontation initiated by Ms. Bazile at Ms. Bourgeois' home and the filing of what Ms. Bourgeois described as an unsubstantiated report against her with Child Protective Services while her request for sole custody of the children was pending. To the extent that the testimony of the two litigants conflicted, the trial court obviously believed Ms. Bourgeois. The court's factual findings are reasonable in light of the record viewed in its entirety. As to the adequacy of a legal remedy, Ms. Bazile is not a party to the custody proceeding, and a future custody adjudication will not provide immediate protection against threats or other harmful behavior by Ms. Bazile.
CONCLUSION
The trial court judgment enjoining Ms. Bazile from engaging in certain conduct is affirmed with respect to Ms. Bourgeois. The judgment, as written, does not include any of the children as protected persons. Costs of the appeal are assessed to Ms. Bazile.
AFFIRMED. LOUISIANA UNIFORM ABUSE PREVENTION ORDER UPHELD AS TO JOY BOURGEOIS.

Ms. Bazile's last name sometimes appears in the record as Bazil. The correct spelling is Bazile, according to exhibits introduced by Ms. Bazile at the hearing.

Ms. Bourgeois attached to her appellate brief a letter from Child Protective Services that was sent to her after the hearing. Because it was not introduced in evidence at the hearing, it cannot be considered on appeal. Lozes v. Lozes , 542 So.2d 603, 604 (La. App. 5 Cir. 1989) ; Davis v. Davis , 606 So.2d 575, 577 (La. App. 5 Cir. 1992).

In her appellate brief, Ms. Bourgeois discusses several things involving Ms. Bazile that occurred after the hearing. Because these matters were not part of the evidence introduced in the trial court, they cannot be considered on appeal. Lozes , 542 So.2d at 604. Appellate courts do not have jurisdiction to receive new evidence. Davis , 606 So.2d at 577.

Ms. Bourgeois' date of birth is listed, but the children's dates of birth are not listed. The children's last name is misspelled on the second page. The section of the form for identifying the type of order being issued was not completed, and the defendant's name is misspelled, as it was in the petition.